IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CLENITH O. BOITEL, JR.                                          PLAINTIFF

V.                              NO.  4:08cv00548 JWC

MICHAEL J. ASTRUE,                                             DEFENDANT
Commissioner, Social
Security Administration

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Clenith O. Boitel, Jr., seeks judicial review of the denial of his claims for a

period of disability and disability insurance benefits and for supplemental security income

(SSI) benefits.  Judicial review of the Commissioner's denial of benefits examines whether

the decision is based on legal error and whether the findings of fact are supported by

substantial evidence in the record as a whole.  *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir.

2009); *see* 42 U.S.C. §§ 405(g), 1383(c)(3).   Substantial evidence is "less than a

preponderance but is enough that a reasonable mind would find it adequate to support the

conclusion."  *Wiese*, 552 F.3d at 730.  In its review, the Court[1] must consider evidence

supporting the Commissioner's decision as well as evidence detracting from it.  *Id.*  That

the Court would have reached a different conclusion is not a sufficient basis for reversal;

rather, if it is possible to draw two inconsistent conclusions from the evidence and one of

these conclusions represents the Commissioner's findings, the denial of benefits must be

affirmed.  *Id.*

        Plaintiff was born on April 30, 1966, and has a limited ninth grade education.  His

past relevant work was as a short order cook, a roofer and a parts clerk.  He protectively

_____

        [1]The parties have consented to the jurisdiction of the Magistrate Judge (doc. 4).

filed his claims on October 13, 2005, stating a disability onset date of January 1, 1999.  He alleged disability due to pain in his left wrist, forearm and elbow, due to residuals of an injury, left groin pain, left hip and low back pain, Hepatitis C, severe fatigue, anxiety, anger and depression.

The Administrative Law Judge (ALJ) held a hearing on July 17, 2007, and rendered her decision denying benefits on September 17, 2007.  That decision has become the final decision of the Commissioner.

To evaluate Plaintiff's claim, the ALJ followed the five-step sequential process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  At step two, she found Plaintiff had the following severe impairments: marked degenerative arthritis in his left elbow; deformity of his left distal radius compatible with old trauma; small disc ridge complexes in his cervical spine and hepatitis C.  (Tr. 16.)  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the listings).  At step four she evaluated Plaintiff's credibility, finding his complaints not fully credible.  The ALJ then determined Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff to be unable to perform his past relevant work.  At step five, based on testimony of a qualified Vocational Expert (VE), the ALJ found there were jobs existing in significant numbers in the national economy that Plaintiff could perform and found him "not disabled."

Plaintiff argues that the ALJ failed to fully develop the record by her failure to order a consultative psychological examination and a consultative examination by an orthopedic

2

specialist.   He also argues that the ALJ's credibility analysis is flawed, her RFC is unsupported by substantial evidence and that she erred in finding Plaintiff had the ability to perform other work (an attack on the hypothetical question posed to the VE).   For the reasons that follow, the decision of the ALJ is affirmed and the case will be dismissed with prejudice.

### Weight to be Given Medical Evidence

The course of Plaintiff's medical treatment presents issues which are relevant to the resolution of each of his arguments on appeal.   Aside from obvious problems with his left elbow and wrist, the medical records show very little objective evidence of impairment and no evidence of disabling impairment.   Further, there is no evidence of mental health complaints or treatment until shortly before Plaintiff's hearing with the ALJ.   The records show only conservative treatment and there are long periods when Plaintiff apparently did not seek medical care for any of the impairments which he contends render him totally disabled.   Also, at least since 2003, he has not used prescription pain medication.   The ALJ considered the lack of objective medical evidence, lack of aggressive treatment and medication, and the long gaps between doctor visits to be relevant factors in deciding whether to order further consultative examinations.   She also considered this when she evaluated the credibility of Plaintiff's complaints and in determining his RFC.   Plaintiff says he did not have funds to see doctors, pay for more comprehensive medical care or pay for medication.   He says he had to rely on small, free clinics.   He argues that it is therefore unfair to rely upon the lack of medical evidence in denying his claim.

Plaintiff testified that he fell off a roof in 1997, injuring his left elbow, left wrist, left hip and back.   X-rays done August 31, 1998, showed his left shoulder to be normal.   There

was mild degenerative spurring in his left elbow and a left wrist deformity of the distal radius.  Plaintiff's pelvis was shown to be normal.  (Tr. 118-119.)  The next medical treatment occurred on July 20, 1999, when he was treated for a foreign object in his eye incurred while he was cutting a tree down at his home.  (Tr. 116.)  This is relevant only in that it shows physical activity after the alleged onset of disability.

On October 5, 2001, more than two years later, Plaintiff first visited R. Mann, M.D., stating that he had fallen off a roof and complaining of knee, elbow and back pain.  (Tr. 103.)  An MRI of Plaintiff's lumbar spine was done on October 16, 2001, which showed the discs to be normal, without protrusion.  There was no edema of the nerve roots and no abnormal signal from the marrow.  The impression was a negative MRI of the lumbar spine.  (Tr. 110.)  Plaintiff continued to see Dr. Mann on an approximately monthly basis until May 17, 2003.[2]  On May 20, 2003, a test at St. Mary's Regional Medical Center apparently confirmed that Plaintiff suffers from Hepatitis C.  Dr. Mann noted this on June 4, 2003, stating that he needed to discuss treatment at Plaintiff's next office visit, but was unable to contact Plaintiff.  (Tr. 88.)  Dr. Mann's final notation was made on June 10, 2003, where he stated that the Hepatitis C needed to be treated and this was to be discussed at the next office visit.  (*Id.*)  However, Plaintiff apparently never returned as there are no further records by Dr. Mann.

During the time that Plaintiff was being treated by Dr. Mann, several medical record entries were made that are relevant to the case.  On April 6, 2002, Plaintiff went to St. Edward Mercy Medical Center stating that he was framing a house and a nail ricocheted,

---

[2]  Dr. Mann's complete clinical notes appear at Tr. 88-103.  The last recorded actual visit is at Tr. 89.

puncturing his hand.  (Tr. 103.)  On December 28, 2002, he presented to Dr. Mann, complaining of pain.  Dr. Mann noted that Plaintiff "has been working a plumbing job," and apparently noted that Plaintiff was working "3 jobs at present."[3]  (Tr. 93.)  On March 5, 2003, Plaintiff was in a motor vehicle accident.  X-rays taken at Booneville Community Hospital showed a normal skull and right shoulder.  The left elbow showed "quite a bit" of degenerative arthritis, which was marked, with hypertrophic bone.  There were no acute fractures and the cervical spine was noted as normal.  (Tr. 114-115.)  On March 27, 2003, a cervical spine MRI demonstrated an unremarkable marrow signal with no abnormal signal seen within the spinal cord.  There were disc ridge complexes at C3-4 and C5-6, but there was no significant compression of the spinal cord and no degree of canal stenosis or narrowing of the neural foramina.  There was minimal narrowing of the thecal sac, but this did not cause spinal cord compression or significant neural foramina narrowing; although the physician felt it might slightly impinge upon the existing C-6 nerve root on the right.  The impression was only, "small disk ridge complexes at the C3-4 and C5-6 levels." (Tr. 109.)  Finally, on April 19, 2003, Plaintiff went to Dr. Mann complaining of pain in his shoulder and neck, which Dr. Mann noted occurred, "on lifting sheetrock."  (Tr. 90.)  The above entries confirm that Plaintiff had significant injury to his left elbow and wrist, but are evidence the motor vehicle accident in March 2003, did not significantly increase his impairments.  The record also shows he continued to engage in significant physical activity after his alleged onset date, which is inconsistent with his testimony of severely restricted daily activities.

---

[3]  Dr. Mann's notes are for the most part illegible, but this interpretation appears to be valid.

After the test of May 20, 2003, confirming Hepatitis C, there are no medical entries whatsoever until May 12, 2005, when Plaintiff went to Booneville Community Hospital with a swollen inner upper left arm with redness and edema.  This was apparently an abscess, which was drained.  This was an acute episode and Plaintiff left the hospital against medical advice while staff was registering another patient.  (Tr. 111.)  Thus, it is not an instance where he was complaining of problems connected to his alleged impairment.

Except for a report of a consultative examination done by Dr. Michael Westbrook, performed at the request of the agency, the only additional medical entry is dated May 10, 2007, and documents a visit to River Valley Christian Clinic.  Plaintiff presented complaining of chronic pain related to his prior work-related fall ten years earlier.  He reported that there was a fracture to his left elbow and wrist and that the left hip had been dislocated.  He also complained of neck pain related to his motor vehicle accident, left groin pain and inability to sleep at night due to throbbing pain in left arm.  The progress note indicates "[patient] anxious (followed by an unintelligible word)," and that he also complained of epigastric pain - "gas." (Tr. 133.)  The physical examination showed a deficit relating to the left elbow and left wrist deformation.  Notably, the examination entry related to Plaintiff's back is checked "normal."  The impression, though difficult to read, appears to state Plaintiff had chronic pain, chronic disability secondary to prior injuries, depression secondary to pain.  (Tr. 132.)

As stated above, Plaintiff contends he had no funds for medical treatment and access only to small, free medical clinics which had limited services.  Therefore, he argues, the ALJ should not have relied upon the lack of more comprehensive treatment and the lack of doctor visits, with the long gaps in treatment in deciding the various issues in this

case.   There is no doubt Plaintiff's funds and access to medical care were limited. However, the overall evidence supports the consideration of lack of medical care in determining those issues.  Plaintiff did indicate he had access to free services.  With the exception of visits related to his motor vehicle accident and abscessed arm, there is no evidence Plaintiff tried to avail himself even of the free medical services for the long period between his last visit to Dr. Mann and his visit to the River Valley Christian Clinic.  The fact that he did go to River Valley shows that such service was available, yet he did not go there or elsewhere for his alleged impairments until two months before his scheduled hearing before the ALJ; a visit that could fairly be interpreted as an attempt to build his case.  The visits to Booneville Hospital in connection with his motor vehicle accident and left arm abscess show that he sought help when needed.    Surely, if his pain and depression were at a disabling level, he would have sought help during the forty-three months for which there are no medical records.  As to the lack of prescription medication, the ALJ made the valid point that Plaintiff continued to smoke, choosing that over spending the available money for medication.  This is a legitimate indication that the pain was not so great as to be disabling.

In summary, there is substantial evidence supporting the conclusion that the ALJ was justified in considering the lack of medical care, long gaps in treatment, lack of aggressive treatment and the fact that Plaintiff had not taken prescription pain medications for many years in deciding the issues presented in this case.

### Requests for Consultative Examinations

Plaintiff's counsel requested that his client be given a consultative psychological examination and a consultative orthopedic examination.  The ALJ denied the requests, which Plaintiff asserts was a failure to properly develop the record.

Generally, the ALJ has the duty to fully and fairly develop the record, even where the claimant is represented by counsel.  *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).  However, the ALJ's failure to independently develop the record justifies reversal or remand only where such failure is unfair or prejudicial.  *Id.* at 839.  While the ALJ has a duty to ensure that the record is fully and fairly developed, this does not absolve the claimant of his responsibility under the regulations to provide evidence establishing the severity of his alleged impairments. 20 C.F.R. §§ 404.1512(c), 416.912(c).  The ALJ's duty to develop may include seeking a consultative examination or clarification from medical sources if a crucial issue is undeveloped or underdeveloped.  *See Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006); *Snead*, 360 F.3d at 838-39.  However, the regulations do not require that the ALJ order a consultative evaluation of every alleged impairment.  They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.  20 C.F.R. § 1519a; 20 C.F.R. § 416.919a; *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989).  The regulations make it clear that when making a decision whether the evidence already in the record is sufficient to support a decision on the claim, the ALJ must consider the entire record, including non-medical as well as medical evidence.  20 C.F.R. § 1519a(b) and 20 C.F.R. § 416.919a(b).

Request for Consultative Psychological Examination

Plaintiff testified that for three years, he has not wanted to be around anyone, that he wants everyone to leave him alone, that he is uncomfortable around people and does not relate to people.  He said that even his own family does not want to have anything to do with him.

However, the evidence, both medical and non-medical, is sufficient to support the ALJ's assessment that any mental impairment is no more than mild.  The refusal to send Plaintiff for a mental examination was neither unfair nor prejudicial.  The ALJ specifically recognized that Plaintiff had alleged disability due to anger and depression, but then fully explained his assessment and his reasons for denying Plaintiff's request.  (Tr. 17-18.) Plaintiff had never seen a mental health professional and there is no indication in the record that he received or even requested mental health treatment or medication. Plaintiff's argument that his lack of treatment was due to lack of money has been discussed above.

Plaintiff's counsel stated in a memorandum of appeal to the Office of Hearings and Appeals that "[Plaintiff's] doctors have noted that he was depressed and anxious about his chronic pain and its effect on his lifestyle and ability to work."[4]  However, counsel did not cite to the record and there is very little in the record to support that assertion.  The only extensive medical records are office notes of Dr. Mann, who saw Plaintiff on a monthly basis from October 5, 2001, through May 20, 2003.  (Tr. 88-103.)  Dr. Mann's notes are extremely hard to read, but it is clear the focus was on treatment for physical problems, not

---

[4]  Tr. 145.

mental.  Plaintiff did not mention anger, depression, or any other mental health problems to Dr. Michael Westbrook, who performed a consultative examination on March 9, 2006. In the report section on mental status, Dr. Westbrook stated there was no evidence of a serious mood disorder.  (Tr. 124-130.)  In a history note contained in the River Valley Christian Clinic records dated May 10, 2007, it appears there is a cryptic reference to "anxiety," and the impression note arguably indicates depression secondary to pain.[5] However, this obviously is based on the history as given by Plaintiff and there is no indication that the clinic physicians performed any physical or psychological tests to evaluate his physical or mental condition.  He went to this clinic after his disability claim had been filed and only two months prior to his administrative hearing; after a period of nearly four years without any record of visits relating to any of Plaintiff's claimed impairments.[6]  Thus, this record amounts to nothing more than a bare assertion by Plaintiff that he was anxious and depressed, made at a time when he had put his mental condition in issue and shortly before his hearing before the ALJ.

Perhaps most importantly, other evidence in the record fully supports the ALJ's decision that a mental health consultative examination was not justified; namely the evidence relating to Plaintiff's daily activities and social functioning.  That evidence provides substantial support for the finding that any depression, anger or anxiety would not

---

[5]  Tr. 132-133.  The Court notes that this interpretation of the handwritten notes is contrary to the ALJ's assertion that Plaintiff did not mention any mental symptoms at this examination.  Even if the ALJ was mistaken on this particular point, her decision is supported by substantial evidence.

[6]  Plaintiff last saw Dr. Mann in May 2003.  The only medical treatment Plaintiff received during the period between that date and the River Valley Christian Clinic visit on May 10, 2007, was for an abscess in his left arm, which was drained.  Plaintiff left the clinic against advice.

significantly impair Plaintiff's ability to perform work.   In his opinion, the ALJ discusses Plaintiff's degree of limitation in activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  He found only mild limitation in the first three and no evidence of decompensation.  The evidence specifically discussed by the ALJ is sufficient to support his conclusion that Plaintiff's mental limitations were not "severe."   Thus, the failure to obtain further evidence in the form of a psychological consultative evaluation was neither prejudicial nor unfair.  There was sufficient evidence in the record to support his conclusions.

Request for Orthopedic Consultative Evaluation

The ALJ did refer Plaintiff to Dr. Michael Westbrook, a board certified specialist in family practice.  Plaintiff argues that he should be sent to an orthopedic specialist because his physical impairments are orthopedic in nature.  Plaintiff points to no authority for the proposition that a claimant is automatically entitled to an examination by a specialist.  Here also, the decision is within the discretion of the ALJ and the dispositive question is whether the failure to make the referral was prejudicial or unfair.  There are several reasons why it is not so in this case.  Plaintiff makes no assertion that Dr. Westbrook was not qualified. He presents no evidence that a family practice physician is not well versed enough in orthopedics to make a valid assessment.   Counsel makes the bald assertion that the examination was cursory, but there is no evidence to support that assertion.  The doctor took an adequate history and did a physical examination, completing the disability determination form.  It is true, as Plaintiff argues, that Dr. Westbrook did not fill in the blank asking about limitations contained on the last page of the form (Tr. 130), but, based on the results listed for the examination, it is apparent that he found no such limitations.  While

he found shoulder and neck pain, past fractures of the left arm with pain and limitation of motion in the left elbow, and hip pain on the left, all measurements of range of motion and reflexes were within normal limits.  There was no muscle atrophy and gait and coordination were within normal limits, as were other neurological indicators.  As to limb function, he found everything within normal limits except grip strength was 90% of normal, that Plaintiff was unable due to left hip, leg and groin pain to walk on heels and toes, and that Plaintiff was unsteady in squatting and arising from a squatting position.  These findings adequately characterize any functional limitations from which Plaintiff was suffering.  His findings are consistent with those of other treating physicians and with the results of x-rays and the MRI in the records.  There is nothing in the record to indicate that Plaintiff's orthopedic problems were unique or so complicated as to be beyond the expertise of a family physician and to require an examination by a specialist.  This conclusion is also supported, as discussed above in the section on the medical records, by the lack of more aggressive treatment and the long periods during which Plaintiff sought no medical attention.  An examination by an orthopedic specialist was not indicated.

### Credibility Analysis

The ALJ, in making her credibility analysis, correctly set forth the factors required by the regulations.  (*See*, Tr. 19-20.)  It should also be noted at the outset that the ALJ did not find Plaintiff free of pain, but rather merely found that his complaints were not credible to the extent alleged.  This is reflected in her RFC determination in which she found limitations in lifting, carrying, sitting, standing, reaching and climbing.  She also recognized that Plaintiff's pain and problems with sleeping would limit his mental abilities and restrict him to certain types of jobs.  She gave a good deal of credence to Plaintiff's complaints -

she just did not conclude that he is subject to the extreme pain and limitations to which he testified.

A claimant's subjective complaints may be discounted if they are inconsistent with the evidence as a whole.  *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007).  The ALJ is in the best position to gauge credibility and is granted deference in that regard as long as she explicitly discredits a claimant's subjective testimony and gives good reasons for doing so.  *Id.* at 695-96.  The Social Security regulations and rulings identify a number of factors for the ALJ to consider in assessing credibility, most of which were set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c);[7] Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3, *5 (S.S.A. 1996).  However, an ALJ need only acknowledge and consider these factors, and need not explicitly discuss each one.  *Casey*, 503 F.3d at 695.  Nor is an ALJ required to discuss all of the evidence submitted, and her failure to cite specific evidence does not mean that it was not considered.  *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

Plaintiff complains that the ALJ picked certain largely irrelevant bits of information from the record to justify her conclusion.  While some of the evidence she mentions in her credibility analysis would bear less weight, her decision is well supported by other legitimate considerations.

---

[7]As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

The extended period during which Plaintiff did not seek medical help is an indication that his pain and alleged impairments did not reach the level he describes.   As fully discussed above, the ALJ was justified in considering this gap in determining the various issues presented in this case.   Although Plaintiff says he had no funds and was limited to charitable clinics, he did not avail himself even of those until he visited the River Valley Christian Clinic in May 2007, after the issues of his claim were joined and shortly before his scheduled hearing.   He did get medical treatment for the abscess in his arm in May 2005, which suggests he could and did go to the doctor when he needed medical care. The failure to seek medical care for problems related to his alleged impairments for so many years during the period relevant to this claim is inconsistent with his claims of extreme pain and limitations.

The ALJ also referred to the fact that Plaintiff reported on three separate occasions; March 2003, May 2005 and March 2006, that he was not taking prescription pain medication.   *(See*, Tr. 21.)   The failure to obtain prescription medication is a factor that may be taken into account in a credibility determination.   *Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (proper to discount allegations of disabling pain due to lack of corroborating medical evidence, claimant's activity level and work record, and her failure to take prescription pain medication).   While Plaintiff pleads lack of funds, he did continue a smoking habit, as mentioned by the ALJ.

Another factor considered by the ALJ was that although Plaintiff complains of severe low back, left hip, and left groin pain, pelvic x-rays taken in 1998, after his fall, showed no bony abnormality.   *(See* Tr. 119.)   In addition, a lumbar MRI performed on October 16, 2001, showed the discs to be normal, with no protrusion.   There was no edema of the

14

nerve roots and there was no abnormal signal from the marrow.  The impression was, "Negative MRI of the lumbar spine."  Also,  the physician's examination at the River Valley Christian Clinic in 2007, found no deficit to the back, although Plaintiff apparently complained of pain in the sacroiliac area.  (*See*, Tr. 132.)  A deficit was found only as to the elbow and wrist.  *(Id.*)

Further, the ALJ correctly noted that no physician had ever ordered anything other than routine and conservative care for Plaintiff's orthopedic problems.  This was true even when Plaintiff was regularly going to Dr. Mann.

Finally, the ALJ discussed the inconsistency in Plaintiff's information relating to daily activities.  Plaintiff said he stopped working in 1999 because he could not handle the physical strain.  He testified he does not do much and just tries to move around to ease the pain, not leaving his home for days.  As the ALJ points out, medical records indicate physical activity on a higher level, chronicling cutting down a tree in 1999, framing a house in 2002, installing insulation in his house, also in 2002, working in construction in 2002 and 2003, and lifting sheetrock on April 19, 2003.  *(See*, discussion at Tr. 22.)  Although Plaintiff says his condition has worsened with time, the failure to seek medical care in the years before his hearing belies this assertion and is an indication that while the problems may have increased, they did not reach a disabling level.

The above factors adequately support the ALJ's decision to discount Plaintiff's complaints to the limited extent she did discount them.

**Determination of RFC**

Residual functional capacity (RFC) is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a)(1), (b) & (c), 416.945(a)(1), (b) & (c). The ALJ bears the final responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *see* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 416.927(e)(2), 416.945(a)(3). Nevertheless, the burden of establishing the RFC rests on the claimant, not the Commissioner.

The ALJ found Plaintiff to have the RFC to:

> . . . lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit six hours in an eight-hour workday and stand and/or walk six hours in an eight-hour workday. Further, the undersigned finds that the claimant is unable to reach overhead with his non-dominant left arm and that due to safety precautions, he is unable to climb scaffolds, ladders and ropes. In addition, the undersigned finds that due to pain, fatigue and problems with sleep, the claimant is able to perform work that involves only non-complex, simple instructions with little judgment, work that is learned by rote with few variables, work that involves only superficial contact incidental to work with the public and work that involves supervision that is concrete, direct and specific.

(Tr. 18-19.)

Plaintiff argues that his back pain should have been found "severe" at step two and the pain in his hips and back would prevent sitting, standing or walking for six hours in a workday. As discussed above, the scant treatment record, negative x-ray and MRI evidence, and lack of prescription medication are sufficient bases for discounting Plaintiff's complaints of back and hip pain. Plaintiff has not alleged impairments from the back

16

condition other than pain and Dr. Westbrook's examination showed no limitations in range of motion, etc.  The ALJ did take into account the amount of pain which she found to be credible and gave good reasons for not fully crediting Plaintiff's complaints.  She included pain in her RFC analysis.

Plaintiff also argues that due to his arm condition, he cannot lift even twenty pounds occasionally and ten frequently and that the mere restriction of overhead reaching is insufficient.  There is no evidence in the record of loss of strength (except for grip, which was 90% of normal).  The impairment is to Plaintiff's non-dominant arm.  Range of motion, as Defendant points out was reduced by only twenty percent and Plaintiff fails to explain why this reduction would prevent "any lifting."

As to Plaintiff's argument that the ALJ erred in failing to include mental limitations in her RFC assessment (other than those caused by pain and lack of rest), the Court has fully discussed the evidence on that point. There is absolutely no evidence of limiting depression or anger in the record; there is only Plaintiff's bare assertion.  Further, any depression appears to be situational.  That is, it is a result rather than a cause of not working.

Finally, Plaintiff argues that Dr. Westbrook, the consultative examining physician failed to fill out the section of the report asking whether there are limitations on certain abilities, and to state the severity of the limitations.  (*See* Tr. 130.)  Plaintiff says this renders the RFC determination without sufficient basis in the evidence.  It is true that Dr. Westbrook left the section blank and, of course, it is impossible to tell whether he meant this as an indication he found no significant limitations or just overlooked the section. However, the balance of the report establishes any possible limitations to an extent

17

sufficient to serve as a basis for the RFC determination.  Further, Plaintiff's argument overlooks the proposition that the ALJ, in determining RFC is required to consider all relevant evidence in the record, not just that one medical evaluation.  Overall, there is sufficient evidence to support the RFC determination.

### Alleged Error in Finding that Plaintiff Could Perform Other Work

This is in essence an attack on the propriety of the hypothetical question posed to the VE.  At step five, the Commissioner bears the burden of showing that jobs exist in significant numbers which a person with the claimant's residual functional capacity and vocational factors can perform.  20 C.F.R. § 416.960(c)(2).  He can utilize the testimony of a vocational expert to satisfy this burden, *id.* § 416.966(e); however, such testimony constitutes substantial evidence only when "based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies."  *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008).  The hypothetical need include only those impairments or restrictions that are supported by the record and that the ALJ accepts as valid.  *Howe v. Astrue*, 499 F.3d 835, 842 (8th Cir. 2007).

Because the Court has determined that the RFC as found by the ALJ is supported by sufficient evidence, it follows that the hypothetical question, which encompassed the limitations she found Plaintiff to have, did capture the concrete consequences of Plaintiff's deficiencies and was proper.  Therefore, the final conclusion that Plaintiff would be able to perform other work, based on the VE's response to the hypothetical is correct.

**Conclusion**

The decision of the Commissioner is affirmed and this case is dismissed with prejudice.

IT IS SO ORDERED this 22nd day of September, 2009.


_____
UNITED STATES MAGISTRATE JUDGE